IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TAMIA BANKS, on behalf of herself and all others similarly situated, | Civil Action No. |
| | ___4:18-cv-624_____ |
| Plaintiff, | |
| v. | |
| COTTER CORPORATION, COMMONWEALTH EDISON COMPANY, EXELON CORPORATION, EXELON GENERATION COMPANY, LLC, DJR HOLDINGS, INC, AND ST. LOUIS AIRPORT AUTHORITY, A DEPARTMENT OF THE CITY OF ST. LOUIS, | NOTICE OF REMOVAL |
| Defendants. | |

Pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, and any other applicable laws, defendant Cotter Corporation (N.S.L.) ("Cotter") (improperly named as Cotter Corporation), on its own behalf and on behalf of named defendants, Commonwealth Edison Company ("ComEd"), Exelon Corporation ("Exelon"), Exelon Generation Company, LLC ("Exelon Generation"), DJR Holdings, Inc. ("DJR"), and the St. Louis Airport Authority ("Airport Authority") (collectively, "Defendants"), hereby give notice of removal of this action to the United States District Court for the Eastern District of Missouri.  Copies of the Defendants' respective Consents to Removal are appended hereto as **Exhibit B**.  As grounds for removal, Cotter states as follows:

## INTRODUCTION

1.      On or about February 21, 2018, Tamia Banks ("Plaintiff"), on behalf of herself and two allegedly similarly situated proposed classes of individuals, filed a complaint (the "Complaint") in the Circuit Court of St. Louis County, Missouri, Twenty First Judicial Circuit,

thereby commencing the action styled, *Tamia Banks v. Cotter Corporation, et al.*, Case No. 18SL-CC00617.   On April 2, 2018, Plaintiff filed her First Amended Complaint ("FAC") a copy of which, together with all materials filed in connection with this matter, is attached hereto as **Exhibit A**.

2.      Plaintiff alleges that, as a result of the Defendants' collective conduct over the span of several decades, radioactive materials were released into the environment in and around Coldwater Creek, a tributary of the Missouri River that runs throughout North St. Louis County, resulting in the radioactive contamination of Plaintiff's and class members' property and leading to various forms of property damage.  *See generally*, FAC ¶¶ 2, 27-92.

3.      Plaintiff asserts state-law based claims against the Defendants for: (1) trespass; (2) permanent nuisance; (3) temporary nuisance; (4) negligence; (5) negligence per se; (6) strict liability/absolute liability; (7) injunctive relief seeking medical monitoring; (8) punitive damages; and (9) civil conspiracy; and against the Airport Authority only for (10) inverse condemnation; (11) violation of the Missouri State Constitution's due process guarantee; and (12) violation of the Missouri State Constitution's takings and just compensation clause.  *See generally*, *id.* at  ¶¶ 93-196.

4.      As a result of the Defendants' alleged conduct, Plaintiff contends that she is entitled to monetary recovery stemming from:  the loss of use and enjoyment of her property; annoyance and discomfort; damage to her personal property; diminution in the market value of her property; costs and expenses incurred as a result of Plaintiff's exposure to radioactive emissions, including the cost of remediation and relocation; statutory damages under Missouri state law; punitive and exemplary damages; costs and attorneys' fees; and interest on the above amounts.  *See id.* at pp. 38-39.  Additionally, Plaintiff seeks injunctive relief in the form of

2

medical and scientific monitoring of her home and property, as well as environmental testing, clean-up, and continued medical testing. *See id.* at ¶¶ 162-169.

**PARTIES**

5.      Plaintiff is a Missouri citizen who owns and resides upon real property located at 4501 Ashby Road, St. Ann, Missouri, consisting of approximately 0.23 acres of land allegedly situated adjacent to Coldwater Creek. *See id.* at ¶ 18.

6.      Plaintiff alleges that Cotter, ComEd, Exelon, and Exelon Generation are responsible for the radioactive contamination of Plaintiff's and the proposed class members' property, stemming from Cotter's handling, storage and disposal of radioactive materials generated from certain operations in St. Louis. *See generally*, *id*. at ¶¶ 20-24, 63-66.

7.      Plaintiff maintains that DJR was the owner of allegedly radioactively contaminated real property near Coldwater Creek, and that DJR "did nothing to prevent continued dispersal and runoff of hazardous, toxic, carcinogenic, radioactive wastes, including into Coldwater Creek." *See id*. at ¶¶ 25, 75-77.

8.      Plaintiff contends that the Airport Authority was the owner of allegedly radioactively contaminated real property near Coldwater Creek and "did nothing to prevent continued dispersal and runoff of hazardous, toxic, carcinogenic, radioactive wastes, including into Coldwater Creek." *See id*. at ¶¶ 26, 69-74.

**FACTUAL BACKGROUND**

9.      According to the Complaint, from 1942 to 1957, uranium ore was processed at a downtown St. Louis City Site ("SLDS") in connection with the United States' efforts under the Manhattan Project to develop the first nuclear weapons. *See id*. at ¶¶ 56-57.

10.      In the late 1940s, the United States government purchased a 21.7-acre tract of

3

land near the Lambert Airport to store materials generated from processing activities at SLDS. *See id.* at ¶ 58. This site is commonly referred to as the St. Louis Airport Site ("SLAPS"). *Id.*

11.     Thereafter, various radioactive materials resulting from operations at SLDS were stored at SLAPS, and in 1957, radioactively impacted materials were buried on a portion of SLAPS adjacent to Coldwater Creek. *See id*. at ¶¶ 59-60.

12.     Plaintiff further contends that in the 1960s, some radioactive materials that had been stored at SLAPS were moved to a storage site at Latty Avenue in Hazelwood, Missouri (the "Latty Avenue Site"), including a portion of the Latty Avenue Site that later became known as the Hazelwood Interim Storage Site ("HISS"). *See id*. at ¶ 61.

13.     In the late 1960s, Cotter allegedly purchased some of the radioactive materials (including "enriched thorium") stored at SLAPS and the Latty Avenue Site from the United States government, which same materials Cotter allegedly stored, processed, and transported at and to SLAPS and the Latty Avenue Site. *See id*. at ¶¶ 63-66.

14.     According to Plaintiff, various transport and handling activities to and from SLDS, SLAPS, the Latty Avenue Site, and HISS contaminated "haul routes to nearby properties." *See id*. at ¶ 68. Furthermore, Plaintiff alleges that storage operations at both SLAPS and the Latty Avenue Site resulting in the dispersal and runoff of radioactive materials into Coldwater Creek. *See id*. at ¶¶ 69-77.

15.     As a result Defendants' conduct, Plaintiffs claim, "[s]ince 1946, radioactive wastes have migrated from the SLAPS, HISS, and Latty Avenue Site(s) into Coldwater Creek and were released or otherwise deposited along the entire . . . one hundred year flood plain of Coldwater Creek." *See id*. at ¶¶ 78-85.

16.     Plaintiff contends that her property is within the one hundred year flood plain of

4

Coldwater Creek, that there is radioactive contamination present on their property, that this contamination is linked to radioactive materials "generated in the processing of uranium ores in the St. Louis area," and is the result of Defendants' actions.  *See id*. at  ¶¶ 86-90.

17.     According to Plaintiff, this has resulted in damage to her property, necessitating, among other things, "a total and complete cleanup of the contamination . . . to prevent and eliminate further contamination." *See id*. at  ¶¶ 91-2

## **FEDERAL QUESTION JURISDICTION EXISTS**

## I.     **Federal Question Jurisdiction**

18.     Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over this action because it "arises under" federal law, in particular, the Price-Anderson Act ("PAA"), 42 U.S.C. § 2011 *et seq.*, which preempts all of Plaintiff's state-law causes of action.  Given the complete preemption of Plaintiff's state-law claims, the Court has federal question jurisdiction over this action.

19.     "Ordinarily, determining whether a particular case arises under federal law turns on the well-pleaded complaint rule," which provides that:

> whether a case is one arising under the Constitution or law or treaty of the United States, in the sense of the jurisdictional statute[,] . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.

*Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (internal quotations marks omitted).

20.     Under the complete pre-emption doctrine, while "a defendant may not [generally] remove a case to federal court unless the plaintiff's complaint establishes that the case arises under federal law," the Supreme Court has recognized that a "state claim may be removed" if "a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Id. (alteration in original); see Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003).  "This is so because '[w]hen the federal statute completely pre-empts the state-law cause of action, a claim

which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.'"   *Davila*, 542 U.S. at 207-08 (quoting *Anderson*, 539 U.S. at 8).

21.     Further, pursuant to the artful pleading doctrine, a federal court will have jurisdiction if a plaintiff has carefully drafted the complaint so as to avoid naming a federal statute as a basis for the claim, and the claim is in fact based on a federal statute.   *See Franchise Tax Bd. v. Constr. Laborers*, 463 U.S. 1, 22 (1983) ("A plaintiff may not avoid federal jurisdiction by omitting from the complaint federal law essential to his or her claim or by casting in state terms a claim that can be made only under federal law.").

22.     The artful pleading doctrine permits courts to "delve beyond the face of the state court complaint and find federal question jurisdiction" by "recharacteriz[ing] a plaintiff's state-law claim as a federal claim."   *Precision Pay Phones v. Qwest Comms. Corp.*, 210 F. Supp. 2d 1106, 1112-13 (N.D. Cal. 2002) (citing *Hunter v. United Van Lines*, 746 F.2d 635, 640 (9th Cir. 1985)); *see also State ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1109 n. 4 (8th Cir. 1999) (under the artful pleading doctrine, federal courts have subject matter jurisdiction over purported state law claims if a plaintiff failed to plead a federal right or immunity that is an essential element of cause of action); *Missouri v. Webb*, No. 4:11CV1237, 2012 WL 1033414, at *3 (E.D. Mo. Mar. 27, 2012) (observing that "[u]nder the 'artful pleading' doctrine . . . a plaintiff may not defeat removal by failing to plead federal questions that are essential elements of the plaintiff's claim," and stating that "[o]nce an area of state law has been completely pre-empted by the operation of a federal statute, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law").

## II.     The PAA Provides an Exclusive, Retroactive Federal Cause of Action that Completely Preempts Plaintiff's State-Law Claims

23.     Plaintiff's state-law claims alleging various forms of property damage, seeking

injunctive relief, medical monitoring and punitive damages and, as to the Airport Authority only, claims for inverse condemnation and violations of the Missouri State Constitution, are completely preempted by the PAA.

**A.      Federal Preemption Under the PAA**

24.      In 1988, Congress amended the PAA to create a federal "public liability" cause of action for injuries to persons and property arising out of or resulting from any "nuclear incident." *See* 42 U.S.C. §§ 2014(hh), 2014(w); Pub. L. No. 100-408 § 20 (b)(1), 102 Stat. 1084.

25.      A public liability action under the PAA is the exclusive, retroactive federal cause of action governing liability for injuries arising out of nuclear incidents.  *See* Pub. L. No. 100-408 § 20(b)(1), 102 Stat. 1084 ("The amendments governing judicial review of claims arising out of a [nuclear incident] shall apply to incidents occurring before, on, or after the date of the enactment of this Act."); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1099-1100 (7th Cir. 1994) (holding that under the PAA "a state cause of action is not merely transferred to federal court; instead, a new federal cause of action supplants the prior state cause of action.").

26.      Further, the PAA provides that:

> With respect to any public liability action arising out of or resulting from a nuclear incident, the United States district court in the district where the nuclear incident takes place, or in the case of a nuclear incident taking place outside the United States, the United States District Court for the District of Columbia, shall have original jurisdiction without regard to the citizenship of any party or the amount in controversy. Upon motion of the defendant or of the Commission or the Secretary, as appropriate, any such action pending in any State court (including any such action pending on August 20, 1988) or United States district court shall be removed or transferred to the United States district court having venue under this subsection.

42 U.S.C. § 2210(n)(2).

27.      Given the expansive nature of the PAA, virtually every circuit court to address the issue has concluded that "the Price-Anderson Act completely preempts state law causes of action

7

for public liability arising out of or resulting from a nuclear incident." *Adkins v. Chevron Corp.*, 960 F. Supp. 2d 761, 767-68 (E.D. Tenn. 2012) (observing that the Third, Seventh, Ninth, Tenth and Eleventh Circuits are in agreement with the Sixth Circuit's conclusion that the PAA completely preempts state law causes of action); *see also In re Berg Litig.,* 293 F.3d 1127, 1132 (9th Cir. 2002) (observing that a PAA public liability action is plaintiff's "exclusive means" for pursuing claims arising from a nuclear incident); *Roberts v. Florida Power & Light Co.,* 146 F.3d 1305, 1306 (11th Cir. 1998) ("Congress passed the Price–Anderson Amendments Act of 1988 . . . creating an exclusive federal cause of action for radiation injury."); *Kerr–McGee Corp. v. Farley,* 115 F.3d 1498, 1504 (10th Cir. 1997) (observing that the PAA's provisions "appear broad enough to create a federal forum for any tort claim even remotely involving atomic energy production. The PAA on its face provides the sole remedy for the torts alleged . . ."); *O'Conner,* 13 F.3d at 1100, 1105 (stating that "a new federal cause of action supplants the prior state cause of action . . . . [S]tate regulation of nuclear safety, through either legislation or negligence actions, is preempted by federal law."); *In re TMI Litig. Cases Consol. II,* 940 F.2d 832, 854 (3d Cir. 1991) ("After the Amendments Act, no state cause of action based upon public liability exists. A claim growing out of any nuclear incident is compensable under the terms of the Amendments Act or *it is not compensable at all.*"); *McClurg v. MI Holdings, Inc.*, 933 F. Supp. 2d 1179, 1186 (E.D. Mo. 2013).

28.    Although in *Cook v. Rockwell Int'l Corp.*, 790 F.3d 1088, 1996-99 (10th Circuit 2015), the Tenth Circuit found that in specific, limited circumstances not at issue here, a plaintiff's state-law causes of action arising from "lesser nuclear occurrences" might not be preempted by the PAA, the overwhelming majority of courts to address the issue have concluded that the PAA preempts any state-law causes of action arising from or related to nuclear incidents

and radiation injuries.   In the instant case, the factual allegations in Plaintiff's complaint amount

to a putative claim for public liability arising from a nuclear incident.  Whether that claim has

been adequately pleaded is not the topic of this application, and Defendants reserve their right to

challenge the adequacy of Plaintiff's claims.

29.     As observed by the Seventh Circuit, the 1988 amendments "'create[d] a federal

cause of action which did not exist prior to the Act, establish[ed] federal jurisdiction for that

cause of action, and channel[ed] all legal liability to federal courts through the cause of action.'"

*O'Conner*, 13 F.3d at 1101 (quoting *In re TMI Litig.*, 940 F.2d at 856-57); *see also* 42 U.S.C. §

2210(n)(2) ("With respect to any public liability action arising out of or resulting from a nuclear

incident, the United States district court in the district where the nuclear incident takes place . . .

shall have original jurisdiction without regard to the citizenship of any party or the amount in

controversy.").   Indeed, "'[b]y creating this federal program which requires the application of

federal law, Congress sought to effect uniformity, equity and efficiency in the disposition of

public liability claims,'" and "'[w]ith the federal jurisdiction and removal provisions set forth in

the [1988 amendments], Congress ensured that all claims resulting from a given nuclear incident

would be governed by the same law, provided for the coordination of all phases of litigation and

the orderly distribution of funds.'"   *O'Conner*, 13 F.3d at 1101 (quoting *In re TMI Litig.*, 940

F.2d at 856-57).  This is so because the complex federal scheme envisioned by the PAA included

"pervasive federal regulation" that "occupied the entire field of nuclear safety concerns."  *In re*

*TMI Litig.*, 940 F.2d at 858.

30.     In sum, "the field of nuclear safety has been occupied by federal regulation; there

is no room for state law." *O'Conner*, 13 F.3d at 1105.

**B.     Plaintiff Alleges Injuries and Harms that Constitute a Nuclear Incident and,**
**Therefore, Her State-Law Causes of Action Are Preempted by the PAA**

31.     The allegations in Plaintiff's Complaint asserting claims for injuries, damages and relief that arise from a "nuclear incident" as defined by the PAA.  Pursuant to the PAA, a "nuclear incident" is broadly defined as "any occurrence . . . within the United States causing . . . bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous property of source, special nuclear, or byproduct material."  42 U.S.C. § 2014(q).

32.     As a result, the PAA is "broad enough to create a federal forum for any tort claims even remotely involving atomic energy production.  The [PAA] on its face provides the sole remedy for the torts alleged."  *Farley*, 115 F.3d at 1504.

33.     Here, Plaintiff's claims stem from a nuclear incident, given that the entire basis for Plaintiff's Complaint, and the state-law causes of action therein, is their contention that Plaintiff's property "is contaminated by radioactive material," that these materials match the "fingerprint" of radioactive materials generated from uranium ore processing activities in the St. Louis area, and that "[t]his contamination was caused by . . . Defendants' improper handling, storage, and disposal of radioactive materials."  *See* FAC, ¶¶ 89-90.

34.     Specifically, Plaintiff claims allegedly arise from the processing of certain nuclear materials in connection with the Manhattan Project. *See id*. at  ¶ 56.

35.     Plaintiff maintains that, after the Manhattan Project acquired SLAPS in the late 1940s, radioactive materials were stored at SLAPS, including pitchblende raffinate residues, radium-bearing residues, barium sulfate cake, Colorado raffinate residues, radioactively contaminated scrap metal, contaminated vehicles, and "miscellaneous radioactive wastes," and that in the 1960s, some radioactive materials were shipped from SLAPS to the Latty Avenue Site and HISS, resulting in the radioactive contamination of those sites. *See id*. at  ¶¶ 58-61.

10

36.     According to Plaintiff, Cotter purchased the radioactive materials stored at both SLAPS and the Latty Avenue Site, and between 1969 and 1973, conducted various activities in connection with those materials.  *See id*. at  ¶¶ 63-68.

37.     In 1973, the Airport Authority acquired SLAPS, which had previously been managed by "Mallinckrodt" since 1953.  *See id*. at  ¶¶ 71, 73.  According to Plaintiff, "[d]espite knowing that significant activities involving radioactive material were conducted on [SLAPS], the [Airport Authority] . . . did nothing to prevent continued dispersal and runoff" of radioactive materials, "including into Coldwater Creek."  *See id*. at  ¶ 74.

38.     Plaintiff also alleges that, at some undisclosed point in time, DJR purchased the Latty Avenue Site, and that "[d]espite knowing that significant activities involving radioactive material were conduct on the site, [DJR] did nothing to prevent continued dispersal and runoff" of radioactive materials, "including into Coldwater Creek."  *See id*. at  ¶¶ 76-77.

39.     Plaintiff claims that since 1946, radioactive materials have "migrated from SLAPS, HISS, and the Latty Avenue Site(s) into Coldwater Creek," that these materials "were released or otherwise deposited along the entire FEMA one hundred year flood plain of Coldwater Creek," that the "entire one hundred year floodplain of Coldwater Creek is believed to be contaminated" with radioactive materials, that Plaintiffs' home, which is within Coldwater Creeks flood plain, "is contaminated by radioactive material," and that "[t]his radioactive contamination was caused by…Defendants' improper handling, storage, and disposal of radioactive materials."  *See id*. at  ¶¶ 82, 85-87, 90.

40.     In short, the factual allegations undergirding Plaintiff's purported injuries all relate to the Defendants' conduct in connection with nuclear and radioactive materials.  As a result, Plaintiff's claims arise out of an alleged nuclear incident and, pursuant to the PAA, a

public liability action is the "exclusive federal cause of action" for Plaintiff's alleged "radiation injur[ies]," *Roberts,* 146 F.3d at 1306.

41.     Given that Plaintiff's injuries arise from an alleged nuclear incident, liability in this matter is therefore governed by the PAA.  Accordingly, removal to federal court on the basis of federal question jurisdiction is appropriate because the PAA completely preempts Plaintiff's state-law causes of action, and Plaintiff's claim for radiation injuries, although pleaded in terms of state law, are "in reality based on federal law," *Davila*, 542 U.S. at 207-08.

### C.     Notwithstanding Plaintiff's Artful Pleading, Plaintiff Alleges Claims that Fall Squarely Within the Ambit of the PAA

42.     Despite Plaintiff's attempt to artfully plead around the PAA, *see* FAC ¶¶ 13-17, the Complaint alleges facts that give rise to claims for public liability under the PAA and, as a result, her state-law based claims are preempted by the PAA and this Court has jurisdiction.

43.     Specifically, Plaintiff maintains that she does "not allege any causes of actions[sic] arising under any law of the United States," and that her "claims do not fall within the scope of the [PAA]," because neither Coldwater Creek nor the Defendants' alleged conduct giving rise to her claims were subject to "a license," and because Defendants "have never entered into an indemnification agreement with the United States" under the PAA "with respect to the complained activities."  *See id.* at  ¶¶ 13-14.

44.     However, "[t]he plain language of the statute indicates that the possession of a license for radioactive material is unrelated to the jurisdiction issue.  None of the statutory definitions limit the jurisdiction over nuclear claims to licensed activity." *Contromano v. United Techs. Corp.*, 7 F. Supp. 3d 1253, 1257 (S.D. Fla. 2014).

45.     Indeed, given Congress' goal "to expand the scope of federal jurisdiction" through the 1988 amendments to PAA, courts have generally rejected efforts by plaintiffs to

reduce the scope of federal jurisdiction.  *See, e.g.*, *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) (rejecting attempt to limit PAA jurisdiction to indemnitees); *Carey v. Kerr-McGee Chem. Corp.*, 60 F. Supp. 2d 800,804-06 (N.D. Ill. 1999) (rejecting attempt to limit PAA jurisdiction and recognizing that "nuclear incident" was intentionally defined broadly to avoid a situation where defendants were left without a federal forum and were forced to defend against lawsuits "in various jurisdictions under various state laws").

46.     As such, Plaintiff's conclusory allegations concerning the non-federal nature of her claims against Defendants as well as her suggestion that a lack of licensure or indemnification are fatal of this Court's jurisdiction lack merit and do not bar this Court from assuming jurisdiction over the instant case.

## ALL OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED

**I.     Notice of Removal Is Timely**

47.     Plaintiff filed her Complaint on or about February 21, 2018 and her request for leave to file the FAC on April 2, 2018, which the Circuit Court granted on April 10, 2018.

48.     Defendants Cotter, ComEd, Exelon, and Exelon Generation were served with the Summons and Complaint on March 19, 2018.

49.     Defendants Airport Authority and DJR were served on April 2, 2018 and March 28, 2018, respectively. This Notice of Removal is timely because it is filed within thirty (30) days of service of the Complaint upon Cotter, ComEd, Exelon, and Exelon Generation, and within one year of the commencement of this action.  No previous request has been made for the relief requested in this Notice.

**II.    Removal to this Judicial District Is Proper, and Defendants Have Complied With All Procedural Requirements for Removal**

50.     Pursuant to 28 U.S.C. §§ 1441(a) and 1446(a), the Eastern Division of the United

States District Court for the Eastern District of Missouri is the proper venue to which to remove this matter because the Circuit Court for St. Louis County, Missouri, is located within the Eastern Division of this judicial district. *See* Local Rule 3-2.07(A)(1) ("The Eastern Division comprises the counties of . . . Saint Louis, and the City of Saint Louis").

51.     Venue is also proper pursuant to Local Rule 3-2.07(B)(3) because the lawsuit is a civil action brought against multiple defendants, some of which are non-residents, and the claims for relief arose in St. Louis County, Missouri.

52.     As required by 28 U.S.C. § 1446(a) and Local Rule 81-2.03, true and correct copies of all pleadings on file with the Circuit Court of St. Louis County to date are attached hereto as **Exhibit A**. Cotter is unaware of the existence of any additional process, pleadings, or orders other than those included in the exhibits attached hereto. There are no motions pending before the Circuit Court of St. Louis County, Missouri in connection with this matter, nor are there any hearings or conferences presently scheduled.

53.     Pursuant to Local Rules 3-2.03 and 3-2.09, attached hereto are the Civil Cover Sheet and the Original Filing Form. Disclosure of Organizational Interests Certificates will be separately filed by the individual Defendants.

54.     Written notice of the filing of this Notice of Removal will be promptly served on Plaintiff's counsel, and a copy has been filed with the Clerk of the Circuit Court of St. Louis County. Defendants' Notice to Clerk of Filing Notice of Removal will also be promptly filed with the Clerk of the Circuit Court of St. Louis County.

55.     This matter is related to a number of similar lawsuits under lead docket *McClurg v. Mallinckrodt, Inc.*, No. 4:12-CV-00361-AGF (E.D. Mo.) (filed February 28, 2012), and currently assigned to Honorable Audrey G. Fleissig, U.S.D.J. In those lawsuits (which are

14

currently in the expert discovery phase), the plaintiffs seek damages under the PAA for injuries sustained as a result of alleged exposure to radioactive materials handled by Mallinckrodt, LLC's predecessors in interest and Cotter in St. Louis County. The alleged exposures and contamination in all of the cases consolidated in the *McClurg* action are similarly focused on radioactive exposure in St. Louis County at Coldwater Creek as well as SLAPS, the Latty Avenue Site, HISS, and other properties, and are premised on PAA public liability.

56.     This matter is also related to the action *Dailey v. Bridgeton Landfill, LLC, et al.*, No. 4:12-CV-00024-CDP (E.D. Mo.) (removed January 2, 2017). In *Dailey*, the plaintiffs alleged that, as a result of the defendants' collective conduct over the span of several decades, radioactive materials involved in and related to the Manhattan Project's operations in downtown St. Louis were released into the environment in and around the Bridgeton and West Lake Landfills located in Bridgeton, Missouri, contaminating the plaintiffs' property with radioactive materials and causing various forms of property damage. Following removal to federal court, the plaintiffs in *Dailey* amended their complaint to include claims against the defendants pursuant to the PAA. After the defendants moved to dismiss the *Dailey* plaintiffs' amended complaint, the Court dismissed all of the plaintiffs' state-law based causes of action, which were nearly identical to the ones Plaintiff asserts here, as preempted by the PAA.

57.     Defendants hereby reserve their rights to assert any and all defenses to Plaintiff's Complaint and to amend or supplement this Notice of Removal.

58.     Defendants have not answered the Complaint in state court.

59.     Defendants ComEd, Exelon, Exelon Generation, DJR and the Airport Authority are actively participating in, and consent to the removal of, this matter and Cotter's filing of this Notice of Removal.

## <u>CONCLUSION</u>

**WHEREFORE**, in light of the foregoing, Defendant Cotter, along with Defendants ComEd, Exelon, Exelon Generation, DJR and the Airport Authority, respectfully remove this action now pending in the Circuit Court of St. Louis County, State of Missouri, to this Court.

Respectfully submitted,

*/s/ Erin L. Brooks*

_____

BRYAN CAVE LEIGHTON PAISNER LLP
Dale A. Guariglia, Mo. Bar 32988
daguariglia@bclplaw.com
Erin L. Brooks, Mo. Bar 62764
erin.brooks@bclplaw.com
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, Missouri 63102
(314) 259-2000 (telephone)
(314) 259-2020 (facsimile)

MORGAN LEWIS & BOCKIUS, LLP
John McGahren, Esq. (*pro hac vice application forthcoming*)
john.mcgahren@morganlewis.com
502 Carnegie Center
Princeton, NJ 08540
(609) 919-6600 (telephone)
(609) 919-6701 (facsimile)

ATTORNEYS FOR DEFENDANTS
COTTER CORPORATION (N.S.L.),
COMMONWEALTH EDISON COMPANY,
EXELON CORPORATION, and
EXELON GENERATION COMPANY, LLC